AO 93 (Rev. 11/13) Search and Seizure Warrant                    AUSA Andrew C. Erskine, (312) 353-1875

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**UNDER SEAL**

In the Matter of the Search of:

Case Number: **19M690**

the USPS Priority Mail Express package bearing
tracking number ▮▮▮▮▮▮▮ further described
in Attachment A

## SEARCH AND SEIZURE WARRANT

To: Thomas Lynch and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of
the following person or property located in the Northern District of Illinois:

### See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person
or property described above, and that such search will reveal:

### See Attachment B

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>October 29, 2019</u> in the daytime
(6:00 a.m. to 10:00 p.m.).

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the
place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate
Judge.

Date and time issued: <u>October 15, 2019</u>

*Judge's signature*

City and State: <u>Chicago, Illinois</u>

<u>SHEILA FINNEGAN, U.S. Magistrate Judge</u>
*Printed name and title*

AO 93 (Rev. 11/13)  Search and Seizure Warrant (Page 2)

## Return

| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |
|---|---|---|
| | | |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF ITEM TO BE SEARCHED

A USPS Priority Mail Express Parcel with Tracking Number ,
addressed to Spouse 1, ██████████████████████, with a return
address of Spouse 1's Mother, ████████████, Chicago, IL 60638, bearing $25.50
in postage, measuring approximately 12 ½ in. x 9 ½ in., and weighing approximately
11.3 oz.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence, instrumentalities, fruits and contraband concerning violations of Title 18, United States Code, Section 1956(h), and Title 21, United States Code, Sections 841(a)(1) and 846, as follows:

1.  Controlled substances, and any associated packaging

2.  Drug proceeds, and associated packaging

3.  Any items reflecting the identity of the owners of any controlled substances and drug proceeds found in the package.

AO 106 (REV 4/10) Affidavit for Search Warrant

AUSA Andrew C. Erskine, (312) 353-1875

**RECEIVED**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION OCT 15 2019

**UNDER SEAL**

MAGISTRATE JUDGE
SHEILA M. FINNEGAN

In the Matter of the Search of:

Case Number:

**19M690**

the USPS Priority Mail Express package bearing
tracking number ▮▮▮▮▮▮▮▮▮, further described
in Attachment A

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Thomas Lynch, a Postal Inspector of the U.S. Postal Inspection Service, request a search warrant and state
under penalty of perjury that I have reason to believe that in the following package:

**See Attachment A**

located in the Northern District of Illinois, there is now concealed:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence, instrumentalities, fruits, and contraband.

The search is related to a violation of:

*Code Section*

Title 18, United States Code, Section 1956(h)
Title 21, United States Code, Section 841(a)(1) & 846

*Offense Description*

money laundering conspiracy
drug offenses

The application is based on these facts:

**See Attached Affidavit**,

Continued on the attached sheet.

_____
*Applicant's Signature*

THOMAS LYNCH, Postal Inspector
U.S. Postal Inspection Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 15, 2019

_____
*Judge's signature*

City and State: Chicago, Illinois

SHEILA FINNEGAN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT )
                                                       )
NORTHERN DISTRICT OF ILLINOIS )

## **AFFIDAVIT**

I, Thomas Lynch, being duly sworn, state as follows:

1.       I am a Postal Inspector with the U.S. Postal Inspection Service (USPIS).

I have been so employed since approximately September 2017. Prior to becoming

employed with the USPIS, I was a Special Agent with the U.S. Postal Service (USPS)

Office of Inspector General (OIG) for approximately one year and six months.  Prior

to my employment with USPS-OIG, I was a Special Agent with the U.S. Secret

Service for approximately 7 years. As part of my duties as a USPIS Postal Inspector,

I investigate criminal violations relating to violations of the federal laws relating to

the mails and to controlled substances. I have also participated in numerous

investigations involving the distribution of narcotics through the internet, including

the so called, "dark web." I have received training in the area of narcotics

investigations, money laundering, financial investigations, and various methods

which drug dealers use to conceal and launder the proceeds of their illicit drug

trafficking enterprises. As part of my work on narcotics investigations, I have

obtained and participated in the execution of multiple federal search warrants. These

warrants have involved the search of locations including: residences of targets, their

associates and relatives, "stash houses" (locations used to store drugs, money, or

related items), storage facilities, bank safe deposit boxes, cellular phones, and

computers. Evidence recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized therefrom, monetary instruments, and various assets that were purchased with the proceeds of the drug trafficking.

2.     This affidavit is made in support of an application for a warrant to search the USPS Priority Mail Express Parcel with Tracking Number ███████████ described further in Attachment A (the "**Subject Parcel**"), for evidence, instrumentalities, fruits, and contraband described further in Attachment B, concerning money laundering conspiracy offenses, in violation of Title 18, United States Code, Section 1956(h), and narcotics offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3.     The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, fruits, and contraband of violations of Title 18, United States Code, Section 1956(h), and Title 21, United States Code, Sections 841(a)(1) and 846, are located within the **Subject Parcel**.

I.    **FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT PARCEL**

4.    The DEA and USPIS are currently investigating several individuals—including Spouse 1 and Spouse 2—believed to be participating in a money laundering conspiracy, based out of Chicago, ████████████████████. Spouse 1 (who resides in ██████) and Spouse 2 (who resides in ████████) are married (respectively) to Defendant 1 and Defendant 2, relatives who are both serving prison sentences for operating a large narcotics conspiracy that involved multiple tons of cocaine and many millions of dollars of narcotics proceeds. Spouse 1 and Spouse 2 and their associates are believed to be covertly transferring narcotics proceeds via U.S. mail from Chicago and ██████ to themselves. Spouse 1 and Spouse 2 have also used bulk cash to purchase expensive travel for large groups of people. There is probable cause to believe that the **Subject Parcel**, which is addressed to Spouse 1, and which a drug-sniffing dog alerted to, is one such parcel containing narcotics proceeds intended for Spouse 1.

*Witness 1 Informs Law Enforcement that Spouse 2 Has Purchased Expensive Travel with Bulk Cash*

5.    More specifically, on or about May 10, 2018, investigators received information from a witness ("Witness 1") relating to travel purchased in cash by

3

Spouse 2.[1] According to Witness 1, Spouse 2 frequently uses a travel agent in ███████ ███████ to book lavish vacations to locations such as Turks and Caicos, Dubai, Las Vegas (for a Jennifer Lopez concert), and different countries in Europe. Spouse 2 spends approximately $20,000 to $30,000 in cash per trip, which includes airfare and hotel accommodations for groups of people.

6. According to Witness 1, after Spouse 2 arranged for these trips, a male in a large white pick-up truck delivered the cash payments to the travel agency ("Relative 1"). Witness 1 provided investigators Relative 1's first name, which I know—based on communications with fellow investigators who participated in the investigation of Defendant 1 and Defendant 2—to be the first name of a relative of Defendant 1 and Defendant 2. Relative 1 resides in ███████.

7. According to Witness 1, the cash that Relative 1 delivered was "rolled up funny," wrapped up in rubber bands, and "smelled funny." Based on my training and experience, I know that narcotics proceeds are often stored in rolls, wrapped in rubber bands, and have the odor of narcotics. I believe that the cash Relative 1 delivered consisted of narcotics proceeds.

8. On or about July 12, 2018, investigators received additional information from Witness 1. Witness 1 relayed that Spouse 2 had recently traveled to Turks and

---

[1] Witness 1 is a lay witness who has first-hand knowledge about the activity at the referenced travel agency. Information provided by Witness 1 has proven reliable, including by being corroborated by the border-crossing encounters detailed below.

Caicos, which trip cost approximately $30,000. Approximately twelve individuals accompanied Spouse 2 on this trip. Witness 1 stated that Relative 1 made the payment at the travel agency and that the payment was made all in cash.

### Spouse 1 and Spouse 2 Were Stopped at the Border with Evidence of Bulk Cash/Money Laundering

9.      On or about July 4, 2019, officers with U.S. Customs and Border Protection at O'Hare Airport in Chicago had contact with Spouse 1 and Spouse 2 as they arrived in the U.S. on a flight from Greece. Officers conducted a border inspection of Spouse 1's and Spouse 2's personal belongings and cellular telephones. Officers observed that both individuals had travel documents from ███████████ ███████ relating to the trip to Europe—i.e., the same travel agency about which Witness 1 provided investigators information.[2]

10.     Approximately one year earlier, on or about July 19, 2018, officials with Customs and Border Protection and Homeland Security Investigations had contact with Spouse 1 and Spouse 2 pursuant to border authority after the two arrived at JFK Airport in New York from Turks and Caicos. Spouse 2 was in possession of five cellular telephones, including two bearing Chicago area code (312). Spouse 1 was in possession of a piece of notepad paper that had the following handwritten notes:

---

[2] Investigators contacted Witness 1 about this trip, and Witness 1 informed investigators that the trip had been for ten to 12 people to travel to Rome and Greece, and that the trip had been paid for in cash.



11.     Based on my training and experience, and the training and experience of my fellow law enforcement officers, I believe that this paper is a ledger that contained Spouse 1's notes keeping track of the number of packages/amount of narcotics proceeds that Spouse 1 had consumed in the time period indicated.

6

12.     In addition, Spouse 1's cellular telephone contained a photograph of a Discover credit card in the name of Individual A who, based on my conversations with fellow investigators involved in the prior investigation, I know to have been a member of Defendant 1 and Defendant 2's criminal enterprise. Individual A previously admitted transporting bulk currency to Chicago for the enterprise after Defendant 1 and Defendant 2 were in custody.

### *Investigators Find $20,000 in a Parcel Going to a Relative of Spouse 2*

13.     On or about September 16, 2019, investigators inspected a parcel at the USPS ███████ Post Office located at ████████████████████ The parcel was mailed at the ████████ Post Office on September 16, 2019 and was addressed to an individual in ███████████████ with a return address of in ██████████████ Following the alert of a narcotics-detection dog, law enforcement sought and obtained from a federal judge in the Western District of ████ a search warrant, which was executed on the parcel; found inside the parcel was approximately $20,000 in cash. Investigators obtained security video footage of the sender of this cash and investigators positively identified it as Relative 1. Investigators subsequently released the parcel with the money and allowed it to continue to its final destination in furtherance of the investigation.

---

[3] Based upon information gathered during the course of this investigation and prior investigations into and law enforcement contact with Defendant 1 and Defendant 2, this individual is believed to be the wife or significant other of Spouse 2's child.

*Dozens of U.S. Mail Parcels Have Been Sent to Spouse 1 and Spouse 2 Over the Last Approximately 24 Months*

14.     According to U.S.P.S. records, between approximately October 2017 and the present, about 82 packages were sent from the ███████████, area (including ████████████) to two mailing addresses in ██████████ that are associated with Spouse 2. Approximately 21 of these packages were sent to Spouse 2's home address. The reminder of the packages were sent to a commercial mail receiving agency in which a family member of Defendant 2 has a post office box. In addition, according to U.S.P.S. records, between approximately October 2017 and the present, about 55 packages were sent from the Chicago area to Spouse 1's home address in ███████████ the same mailing address as the **Subject Parcel**.

15.     All of the parcels referred to in the above paragraph were sent Priority Mail Express. Based on training and experience, I know drug traffickers frequently use Priority Mail Express overnight shipping to ship narcotics and/or their proceeds to limit the amount of time the contraband is in the mail stream and susceptible to inspection by law enforcement.

*Relative 2 Sends Two Parcels to Spouse 1*

16.     On September 18, 2019, law enforcement traveled to the Elsdon Post Office, located at 4922 S. Kedzie Avenue in Chicago, to review security footage of two parcels mailed to Spouse 1's home address in ████████ One parcel was mailed on or

about September 10, 2019 ("Subject Parcel 2") and one parcel was mailed on or about September 11, 2019 ("Subject Parcel 3").

17. During a review of the footage, law enforcement observed a short, heavier-set Hispanic female with short black hair (later identified as Relative 2) mailing both parcels. Relative 2 paid for both parcels in cash.

**_Relative 2 Sends $5,000 in U.S. Currency and a $500 Visa Gift Card to Spouse 1's residence._**

18. On September 26, 2019, investigators learned that a parcel had been shipped from Chicago (60632) to Spouse 1 by name at her home address in ▮▮▮▮▮ ("Subject Parcel 4"). That same day, a USPIS Postal Inspector inspected Subject Parcel 4 at USPS ▮▮▮▮ Processing and Distribution Center, located at ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subject Parcel 4 was mailed on September 25, 2019, from Chicago (60632), and was addressed to Spouse 1 at her home address in ▮▮▮▮▮▮▮▮▮ with a return address in Chicago (60638).

19. On September 27, 2019, following the alert of a narcotics-detection dog, law enforcement sought and obtained a federal warrant from the Northern District of Illinois, which was executed on Subject Parcel 4. Inside, inspectors found approximately $5,000 in US Currency and a $500 Visa Vanilla Gift card. Attached to the gift card was a receipt for the gift card from a Walgreens Store located on the

---

[4] The parcel was returned to, and arrived in, the Northern District of Illinois on September 27, 2019, at law enforcement's direction.

4300 block of South Archer Avenue in Chicago. The receipt indicated the gift card was paid for in cash on September 18, 2019 at 5:44 p.m. Investigators subsequently released the parcel with the money and allowed it to continue to its final destination in furtherance of the investigation. According to USPS databases, the parcel was delivered on September 28, 2019.

20.     On September 30, 2019, law enforcement traveled to the Walgreens and met with employees to review security footage for the purchase of the gift card found in Subject Parcel 4. During the review of the footage, law enforcement observed the same unknown female Hispanic purchasing the gift card who was observed mailing Subject Parcel 2 and Subject Parcel 3 (later identified as Relative 2). Law enforcement also observed Relative 2 arrive and depart at the Walgreens in a dark colored Buick sedan (Subject Vehicle 1).

21.     That same day, law enforcement traveled to the Elsdon Post Office and reviewed the security footage for the mailing of Subject Parcel 4, which contained $5,000 cash and a $500 gift card. During the review the law enforcement observed Relative 2 had sent Subject Parcel 4. Investigators then queried the driver's license photographs from the Illinois Secretary of State for a female who was listed with the Bureau of Prisons as a visitor of Defendant 1 (who is married to Spouse 1, to whom Subject Parcels 2, 3, and 4 were sent). Upon viewing this female's driver's license photograph, investigators found her substantially similar in appearance to Relative

10

2 who mailed Subject Parcels 2, 3, and 4 to Spouse 1, which included the $5,000 cash and $500 gift card.

22.     According to Illinois Secretary of State records, Subject Vehicle 1 is registered to the home address listed on Relative 2's driver's license.[5] Investigators also queried a law enforcement database and learned that Relative 2 was listed as an involved party for Subject Vehicle 1 when the vehicle was involved in a collision in Chicago in or about June 2017.

23.     On or about September, 30, 2019, I learned that USPS received a telephone call regarding the delivery status of Subject Parcel 4.  During a review of the audio recording of the telephone call, I heard Relative 2 identify herself and ask why the parcel had yet to be delivered. During the conversation, Relative 2 provided her cell phone number as (773) 729-7984 (Subject Phone 2).[6]

24.     According to records kept by USPS and Comcast, IP addresses registered to Relative 2's address queried the delivery status of multiple parcels sent from Chicago (60632) to Spouse 1 at her home address in ▮▮▮▮▮▮▮▮ including Subject Parcel 4.[7]

---

[5] However, Subject Vehicle 1 is registered under a man's name.

[6] On September 27, 2019, I queried a postal database and learned that someone entered the telephone number (773) 729-7984 (Subject Phone 2) on USPS's publicly available website requesting notifications of delivery-status updates regarding Subject Parcel 4.

[7] On October 10, 2019, law enforcement identified a parcel sent from▮▮▮▮▮▮▮▮, to the same address and addressee to which the parcel containing $20,000 was sent. Unlike the **Subject Parcel**, the parcel with $20,000, and Subject Parcels 3 and 4, this October 10 parcel was sent Priority Mail (as opposed to Priority Mail Express). On October 11, 2019, law

### *Relative 2 Sends Spouse 1 the Subject Parcel*

25.     On the morning of October 15, 2019, law enforcement established surveillance on the residence of Relative 2.  During surveillance, law enforcement observed Relative 2 exit the alley way near Relative 2's detached garage operating Subject Vehicle 1.  Law enforcement maintained constant surveillance of Relative 2 from the alley way directly to the Elsdon Post Office where Relative 2 parked the Subject Vehicle near the front entrance of the Post Office.

26.     Relative 2 then entered the Post Office via the main entrance doors.  I entered the Post Office via the rear entrance doors a short time later.  Moments after Relative 2 exited the Post Office, I examined the outgoing mail container behind the retail counter.  Inside the container, resting on top of other parcels was the **Subject Parcel**.  I then seized the parcel for safekeeping.

27.     The **Subject Parcel** was addressed to Spouse 1 by name at her home address in ████████ it had a return address of Spouse 1's mother's address in Chicago (60638), it had the tracking number ██████████, it was sent U.S. Priority Mail Express, it measured approximately 12.5" x 9.5", it weighed approximately 11.3 ounces, and the postage cost $25.50, which was paid in cash.

---

enforcement submitted this October 10 parcel for canine examination, and the canine alerted to the parcel. However, this parcel contained no controlled substances or cash, but instead contained mail addressed to Spouse 2 at a P.O. box in Chicago.

28.     On or about October 15, 2019, I arranged for a United States Customs and Border Protection ("CBP") Canine Officer and his canine partner, "Aja," to examine the **Subject Parcel**. According to the Canine Officer, "Aja" is certified annually by CBP as a narcotics dog. "Aja" was most recently re-certified on or about September 6, 2018. "Aja" is trained to sniff buildings, vehicles, envelopes, and wrapped parcels to detect the odors of heroin, cocaine, marijuana, hash, methamphetamine, ecstasy, and other controlled substances that could be contained inside. "Aja" is also trained to indicate the presence of such substances or their scents by alerting to the item he is sniffing. In addition, according to USPIS records, "Aja" has successfully alerted to controlled substances in U.S. Mail Parcels and letters on approximately 102 occasions since July 2015, with a success rate of approximately 94% percent. To the best of my knowledge, CBP does not maintain records regarding the overall success rate for its drug detection dogs; therefore, only the USPIS success rate is available.

29.     On or about October 15, 2019, at the USPS JT Weeker International Service Center located in Chicago, Illinois, I arranged a controlled substance detection test by placing the **Subject Parcel** among approximately 10 other parcels in the workroom area. USPIS then witnessed "Aja" examine the parcels and observed "Aja" alert by making a pinpoint stare to the **Subject Parcel**. "Aja" did not alert to any of the other parcels. The Canine Officer informed me that "Aja's" actions

indicated the presence of narcotics and/or controlled substances in the **Subject Parcel**. I then took custody of the **Subject Parcel**.

14

## II.    CONCLUSION

30.    Based on the above information, I respectfully submit that there is probable cause to believe that money laundering conspiracy offenses, in violation of Title 18, United States Code, Section 1956(h), and narcotics offenses, in violation of Title 21, United States Code, Section 841(a)(1) and 846, have been committed, and that evidence, instrumentalities, fruits, and contraband relating to this criminal conduct, as further described in Attachment B, will be found in the **Subject Parcel**, as further described in Attachment A. I therefore respectfully request that this Court issue a search warrant for the **Subject Parcel** more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.

FURTHER AFFIANT SAYETH NOT.

Thomas Lynch
Postal Inspector
U.S. Postal Inspection Service

Subscribed and sworn
before me this 15th day of October, 2019

Honorable SHEILA FINNEGAN
United States Magistrate Judge

15

## ATTACHMENT A

## DESCRIPTION OF ITEM TO BE SEARCHED

A USPS Priority Mail Express Parcel with Tracking Number ███████████, addressed to Spouse 1, ████████████████████████, with a return address of Spouse 1's Mother, ████████████Chicago, IL 60638, bearing $25.50 in postage, measuring approximately 12 ½ in. x 9 ½ in., and weighing approximately 11.3 oz.

## **ATTACHMENT B**

### **LIST OF ITEMS TO BE SEIZED**

Evidence, instrumentalities, fruits and contraband concerning violations of Title 18, United States Code, Section 1956(h), and Title 21, United States Code, Sections 841(a)(1) and 846, as follows:

1.    Controlled substances, and any associated packaging

2.    Drug proceeds, and associated packaging

3.    Any items reflecting the identity of the owners of any controlled substances and drug proceeds found in the package.

RECEIVED

FEB 15 2019

MAGISTRATE JUDGE
SHEILA M. FINNEGAN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In the Matter of the Search of:

the USPS Priority Mail Express
package bearing tracking number
███████████, further described in
Attachment A

Case Number: **19M690**

Sheila Finnegan
Magistrate Judge

**UNDER SEAL**

## GOVERNMENT'S MOTION TO SEAL
## SEARCH WARRANT, APPLICATION, AND AFFIDAVIT

Now comes the UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR.,

United States Attorney for the Northern District of Illinois, and states as follows in

support of its Motion to Seal Search Warrant, Application, and Affidavit:

On the 15th day of October, 2019, the government applied for a Search

Warrant in this matter, and submitted an Application and Affidavit in support. The

Search Warrant Affidavit details the facts supporting probable cause to believe that

evidence, instrumentalities, fruits, and contraband concerning money laundering

conspiracy offenses, in violation of Title 18, United States Code, Section 1956(h), and

drug offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846,

will be found within the **Subject Parcel**.

The government will continue its investigation after execution of the Search

Warrant, and disclosure of the Application and Affidavit would jeopardize the

investigation by providing the subject of the investigation an opportunity to destroy

evidence or flee and jeopardize the investigation by disclosing the details of facts

known to investigators, the identities of witnesses, and the investigative strategy. For the foregoing reasons, the government respectfully requests that the Search Warrant, Application, and Affidavit be sealed for 180 days from the date of this Order, until April 13, 2020, except as necessary to facilitate the enforcement of criminal law, including the execution of the search warrant, or to any federal official to assist the official receiving the information in the performance of that official's duties.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:        _____
           Andrew C. Erskine
           Assistant United States Attorney
           219 S. Dearborn Street, Rm. 500
           Chicago, Illinois 60604
           (312) 353-1875

DATE: October 15, 2019

2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In the Matter of the Search of:

the USPS Priority Mail Express
package bearing tracking number
█████████, further described in
Attachment A

Case Number: **19M690**

Sheila Finnegan
Magistrate Judge

**UNDER SEAL**

### ORDER

The UNITED STATES OF AMERICA by its attorney, JOHN R. LAUSCH, JR.,

United States Attorney for the Northern District of Illinois, having moved this Court

to Seal the Search Warrant, Application, and Affidavit, and having demonstrated

good cause in support of its motion, specifically, that disclosure of the Search

Warrant, Application, and Affidavit would jeopardize the investigation by providing

the subject of the investigation an opportunity to destroy evidence or flee and

jeopardize the investigation by disclosing the details of facts known to investigators,

the identities of witnesses, and the investigative strategy.

IT IS HEREBY ORDERED THAT the Search Warrant, Application, and

Affidavit be kept under seal for 180 days from the date of this Order, until April 13,

2020, or until further order of the court, which may include extensions of the seal

upon a showing of good cause.

This Order does not prohibit law enforcement personnel from disclosing the search warrant as necessary to facilitate the enforcement of criminal law, including the execution of the warrant, or to any federal official to assist the official receiving the information in the performance of that official's duties.

ENTER:

_____
SHEILA FINNEGAN
United States Magistrate Judge

DATE: October 15, 2019

2